William M. Fitzgerald, Esq.
LAW OFFICES OF WILLIAM M. FITZGERALD
2nd Fl. Macaranas Bldg., Garapan Beach Road
P.O. Box 500909
Saipan, MP 96950
Telephone: (670) 234-7241
Fax: (670) 234-7530
Email: fitzgerald.law@gmail.com

Attorney for Plaintiff

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN MARIANA ISLANDS**

| | |
|---|---|
| DANNY EWING,<br><br>    Plaintiff,<br><br>  v.<br><br>IMPERIAL PACIFIC INTERNATIONAL (CNMI), LLC,<br><br>    Defendant. | CIVIL CASE NO. 16-00034<br><br><br>**FIRST AMENDED COMPLAINT** |

**INTRODUCTION**

1. This is an action of a civil nature involving exclusive of interests and costs, a sum in excess of $75,000. Every issue of law and fact is wholly between citizens of different states for diversity purposes.

**JURISDICTION**

2. This Court has jurisdiction pursuant to the provisions of 28 U.S.C. § 1332(a)(2).

**VENUE**

3. Venue is proper, pursuant to 28 U.S.C. § 1391(b)(2), because the events giving rise to this cause of action occurred in the Commonwealth of the Northern Mariana Islands.

**PARTIES**

4. Plaintiff Danny Ewing ("Ewing") is a citizen of the Commonwealth of the Northern Mariana Islands.

5. Defendant Imperial Pacific International (CNMI), LLC ("Imperial Pacific") is a Limited Liability corporation whose sole member is Best Sunshine International Limited ("BSI"), a British Virgin Islands corporation.

**FACTS**

6. Defendant Imperial Pacific, instituted and operates Best Sunshine Live, a casino and training platform, training casino workers to ultimately service its permanent casino, now being constructed in Saipan.

7. At all times mentioned herein, plaintiff has had a distinguished career in the gaming industry of more than 20 years, working in Las Vegas, Vietnam and Tinian, before his employment with defendant Imperial Pacific.

8. In 2015, plaintiff was recruited by defendant Imperial Pacific to work as a director of Table Games and then promoted on November 30, 2015 to Vice President of Table Games at defendant's live training facility in Saipan, before being terminated on August 1, 2016.

9. Plaintiff at the time of his termination was working pursuant to a contract dated November 30, 2015 that contemplated the duration of plaintiff's employment to be for such period that his work was satisfactory and until the date of his termination, his work, on behalf of defendant, was not only satisfactory, but exemplary and was performed professionally and competently, plaintiff receiving absolutely no complaints from defendant Imperial Pacific, but rather, a promotion.

10. Beginning in February 2016, however, there was a change in the management of Imperial Pacific and at around this time, plaintiff became aware that Imperial Pacific was

engaging in practices that were in violation of the law and contrary to the public policy of both the United States and the CNMI.

11. Like financial institutions, casinos are governed by the Bank Secrecy Act ("BSA") 31 USCA 5311-5330 and are required to file appropriate reports with the Financial Crimes Enforcement Network ("FinCEN").

12. Casinos in the United States, which generate more than $1,000,000 in annual gaming revenues are required to report certain currency transaction to assist FinCEN, a bureau of the United States Department of the Treasury, in uncovering money laundering activities and other financial crimes.

13. Casinos are also required to enact strict Anti-Money Laundering ("AML") programs and to follow them, pursuant to 31 CFR 1022.210-1022.67, but Imperial Pacific failed to implement or enforce an adequate AML program, and plaintiff complained to Imperial Pacific and told them that they must enact and follow an effective AML program.

14. In late February or early March 2016, plaintiff reported to Imperial Pacific management, specifically Mr. Kwong Yiu Ling, that Imperial Pacific had allowed a casino customer, named Mr. Ma, to deposit $400,000 with the casino's cashier without the required AML identification and that this needed to be corrected. Defendant ignored plaintiff's report and failed to take any action.

15. In May 2016, plaintiff also informed Imperial Pacific management that its practice of posting the AML requirements at the entrance of the casino and providing all new players that sign up for a player's card with explanations of how to structure their transactions to avoid reporting requirements was a violation of FinCEN regulations known as "structuring" and must be stopped.

16. Plaintiff's complaints and reports of violations were ignored and he was told to cease his complaints and that if he communicated these complaints to Mark Brown, Imperial Pacific's Chief Executive Officer, he would be terminated.

17. As part of Imperial Pacific's AML committee, plaintiff informed Special Vice President Vic Choi, that an executive and board member of Imperial Pacific, Yuki Xia, who was actively supervising casino workers on the floor, even though she did not have the appropriate visa that would allow her to work in the CNMI, was allowing, if not encouraging, her workers to submit incomplete and misleading, required "Know Your Customer" documentation and that this was a violation of FinCEN regulations, which he would not go along with and must be stopped.

18. Plaintiff also directly told Yuki Xia, that her practice of requesting staff for VIP players by race and gender was illegal and must be stopped; that her practice of allowing VIP players to block the doors of VIP rooms was a safety hazard and an OSHA violation and must be stopped; that her practice of requiring her hourly employees to work overtime without being paid must be stopped; and that her practice of keeping tips intended for her employees, for herself, was illegal and must be stopped.

19. In May 2016, plaintiff also complained to Imperial Pacific management that Imperial Pacific was violating the immigration law and public policy of the CNMI by failing to hire qualified U.S. and local applicants for jobs, instead, implementing a policy of recruiting non-U.S. citizens solely from Asian countries and employing them instead of qualified U.S. and CNMI citizens.

20. Plaintiff complained about these and other violations of law, and informed Imperial Pacific that it had to stop these practices and conform to the law.

21. Plaintiff's complaints were ignored and he was instructed not to apply for jobs posted on the CNMI Job Vacancy Announcement ("JVA") website because these jobs were to be filled by Chinese.

22. Imperial Pacific conditioned plaintiff's continued employment upon his participation in unlawful conduct by Imperial Pacific, which plaintiff refused to do.

23. Plaintiff's employment was terminated on August 1, 2016, with no advance notice and no reason given.

24. Defendant Imperial Pacific terminated plaintiff because he complained about and refused to participate in or acquiescence to illegal acts by Imperial Pacific, even though he was simply complying with his legal duty.

25. Plaintiff, in good faith, believed these actions of Imperial Pacific to be violations of law and the public policy of the United States and the CNMI, and that by bringing these actions to the attention of Imperial Pacific management, he was acting in the best interests of the company, as well as the people of the CNMI and the United States.

26. Plaintiff's employment continued until August 1, 2016, when defendant Imperial Pacific breached the contract's covenant of good faith and fair dealing and violated public policy, by terminating plaintiff, without reason or justification, in retaliation for his numerous complaints about Imperial Pacific's anti-money laundering practices, employment practices, violations of OSHA, and violations of employees' entitlement to overtime pay and tips, all in violation of the public policy of the United States and the CNMI.

27. Defendant Imperial Pacific provided no basis or reason for the termination of plaintiff, an outstanding employee, who had received a promotion and done nothing to merit termination, and the termination was clearly in retaliation for plaintiff's complaints about and refusal to go along with defendant Imperial Pacific's violations of law.

28. On February 2, 2016, Imperial Pacific posted an opening for vice president in charge of table games on the CNMI Labor Department's Job Vacancy website.

29. Plaintiff applied for the position and was given an interview, which was perfunctory and lasted only five minutes.

30. Employers in the CNMI are required by law to hire U.S. citizens rather than non-U.S. citizens, if a U.S. citizen is available and qualified.

31. Imperial Pacific never bothered to inform plaintiff of the interview results and failed to consider him for the position, and even though plaintiff was available and qualified, defendant hired a non-U.S. citizen for the position.

**FIRST CAUSE OF ACTION**
**WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY**
**(ANTI-MONEY LAUNDERING STANDARDS AND REGULATIONS)**

32. Plaintiff restates and realleges as if fully set forth herein paragraphs 1 through 31.

33. Defendant Imperial Pacific, on or about August 1, 2016, wrongfully terminated plaintiff from his employment because of plaintiff's complaints and reports of defendant Imperial Pacific's violations of AML standards and regulations, which violated the public policy of the CNMI and the United States designed to prevent illegal money laundering.

34. These violations of public policy include, but are not limited to:

(1) Failure to report to FinCEN and file a Suspicious Activity Report and a Currency Transaction Report concerning the $400,000 deposit of a Mr. Ma in the spring of 2015.

(2) Providing players with detailed instructions on how to structure their transactions so as to avoid triggering defendant Imperial Pacific's duty to report them.

(3) Failure to devise, enact, implement, and enforce an effective anti-money laundering plan and require its employees to follow it.

6

35. Plaintiff believed these actions of Imperial Pacific to be illegal and violations of public policy and that he was acting in the best interest of his employer by bringing them to its attention and demanding that they be stopped.

36. As a proximate result of this wrongful termination in violation of public policy, plaintiff was caused to suffer, and continues to suffer, from lost wages and other consequential damages, including, *inter alia*, damages for anxiety and severe emotional distress according to proof to be presented at trial.

37. Defendant Imperial Pacific did the things hereinabove alleged, intentionally, oppressively, and maliciously with an evil and malevolent motive to injure plaintiff. These acts, which resulted in plaintiff's wrongful termination against public policy, violated plaintiff's contract's implied covenant of good faith and fair dealing and were obnoxious, despicable, and ought not to be suffered by any member of the community.

38. All actions of defendant Imperial Pacific, its employees and agents, and each of them as herein alleged, were intentional and malicious and were known, ratified and approved by the officers or managing agents of defendant Imperial Pacific and plaintiff is, therefore, entitled to punitive or exemplary damages against defendant Imperial Pacific in an amount to be determined at the time of trial.

**SECOND CAUSE OF ACTION**
**WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY**
**(FAIR LABOR STANDARDS ACT AND OSHA SAFETY REGULATIONS).**

39. Plaintiff restates and realleges as if fully set forth herein paragraphs 1 through 37.

40. Defendant Imperial Pacific, on August 1, 2016, wrongfully terminated plaintiff from his employment because of plaintiff's complaints and reports of defendant Imperial Pacific's employee and board of directors member Yuki Xia's violations of the Fair Labor

Standard's Act and the Occupation Safety and Health Act ("OSHA"), which violated the public policy of the United States.

41. Plaintiff specifically informed Yuki Xia and Vic Choi, who were officers and managers of Imperial Pacific, that Yuki Xia was violating the law and public policy. These violations included, but are not limited to:

(1) Requesting staff for VIP players by race and gender.

(2) Violating OSHA regulations and creating a safety hazard by allowing VIP players to block exit doors of VIP rooms.

(3) Requiring employees working under her supervision to work overtime hours without being compensated for the extra hours.

(4) Failing to distribute tips intended for workers under her supervision and appropriating this money for herself.

42. Plaintiff believed these actions of Imperial Pacific to be illegal and violations of public policy and that he was acting in the best interest of his employer by bringing them to its attention and demanding that they be stopped.

43. As a proximate result of this wrongful termination in violation of public policy, plaintiff was caused to suffer, and continues to suffer, from lost wages and other consequential damages, including, *inter alia*, damages for anxiety and severe emotional distress according to proof to be presented at trial.

44. Defendant Imperial Pacific did the things hereinabove alleged, intentionally, oppressively, and maliciously with an evil and malevolent motive to injure plaintiff. These acts, which resulted in plaintiff's wrongful termination against public policy, violated his contract of employment's implied covenant of good faith and fair dealing and were obnoxious, despicable, and ought not to be suffered by any member of the community.

45. All actions of defendant Imperial Pacific, its employees and agents, and each of them as herein alleged were intentional and malicious and were known, ratified and approved by the officers or managing agents of defendant Imperial Pacific and, therefore, plaintiff is entitled to punitive or exemplary damages against Imperial Pacific, in an amount to be determined at the time of trial.

**THIRD CAUSE OF ACTION**
**WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY**
**(IMMIGRATION VIOLATIONS)**

46. Plaintiff restates and realleges as if fully set forth herein paragraphs 1 through 45.

47. Defendant Imperial Pacific, on August 1, 2016, illegally terminated plaintiff from his employment because of plaintiff's complaints and reports of defendant Imperial Pacific's violation of immigration laws evidenced by a pattern and practice of rejecting qualified U.S. applicants in favor of applicants from Asian countries, and allowing employees to work on the floor of its Saipan casino without proper visas.

48. Plaintiff believed these actions of Imperial Pacific to be illegal and violations of public policy and that he was acting in the best interest of his employer by bringing them to its attention and demanding that they be stopped.

49. As a proximate result of this wrongful termination in violation of public policy, plaintiff was caused to suffer, and continues to suffer, from lost wages and other consequential damages, including, *inter alia*, damages for anxiety and severe emotional distress according to proof to be presented at trial.

50. Defendant Imperial Pacific did the things hereinabove alleged, intentionally, oppressively, and maliciously, with an evil and malevolent motive to injure plaintiff. These acts, which resulted in plaintiff's wrongful termination against public policy, violated his contract of

employment's implied covenant of good faith and fair dealing and were obnoxious, despicable, and ought not to be suffered by any member of the community.

51. All actions of defendant Imperial Pacific, its employees and agents, and each of them as herein alleged, were intentional and malicious and were known, ratified and approved by the officers or managing agents of defendant Imperial Pacific and plaintiff is, therefore, entitled to punitive or exemplary damages against the defendant Imperial Pacific, in an amount to be determined at the time of trial.

**FOURTH CAUSE OF ACTION**
**(WRONGFUL FAILURE TO HIRE)**

52. Plaintiff restates and realleges as if fully set forth herein paragraphs 1 through 53.

53. On or about February 2, 2016, defendant Imperial Pacific published on the CNMI Department of Labor website, an available position with Best Sunshine as Vice President of Table Games.

54. Shortly thereafter, plaintiff applied for this position, which Imperial Pacific knew him to be qualified to fulfill.

55. Plaintiff was given a perfunctory interview pursuant to his application for the position lasting less than five minutes, but was never informed that he had failed the interview or given any explanation of the result of the interview.

56. Imperial Pacific was required under CNMI and U.S. law to consider available and qualified U.S. citizens before hiring non-U.S. citizens, but failed to follow this law, conducting a perfunctory five minute interview with plaintiff and then, without any explanation of the result of his interview, gave the position to a non-U.S. citizen, even though a qualified U.S. citizen was available.

57. Defendant Imperial Pacific's actions in hiring a non-U.S. citizen instead of an available and qualified U.S. citizen violated U.S. law and CNMI law, as well as the public policy of the CNMI and the United States, which promotes employment of U.S. citizens.

58. As a proximate result of this wrongful violation of U.S. law and public policy, plaintiff was caused to suffer, and continues to suffer from lost wages and other consequential damages, including, *inter alia*, damages for anxiety and severe emotional distress.

59. Defendant Imperial Pacific did the things hereinabove alleged, intentionally, oppressively, and maliciously, with an evil and malevolent motive to injure plaintiff. These acts, which resulted in Imperial Pacific's hiring a non-U.S. citizen for a position that a qualified U.S. citizen had applied for were not only a violation of law, but also were obnoxious, despicable, and ought not to be suffered by any member of the community.

60. All actions of defendant Imperial Pacific, its employees and agents, and each of them as herein alleged, were intentional and malicious and known, ratified and approved by the officers or managing agents of defendant Imperial Pacific and plaintiff is, therefore, entitled to punitive or exemplary damages in an amount to be determined at the time of trial.

**FIFTH CAUSE OF ACTION**
**(INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)**

61. Plaintiff restates and realleges as if fully set forth herein paragraphs 1 through 60.

62. As a fifth, separate, and distinct cause of action, plaintiff complains against defendant Imperial Pacific, and realleges all the allegations contained in the complaint, and incorporates them by reference into this cause of action as though fully set forth herein.

63. The conduct complained of hereinabove was outside the conduct expected to exist in the workplace, was intentional and malicious and done for the purpose of causing plaintiff to suffer humiliation, mental anguish, and emotional and physical distress. Defendant Imperial

Pacific confirmed and ratified the complained of conduct, with the knowledge that plaintiff's emotional and physical distress would thereby increase, and this was done with a wanton and reckless disregard of the consequences to plaintiff.

64. As a proximate result of defendant Imperial Pacific's intentional infliction of emotional distress as hereinabove alleged, plaintiff has been harmed, in that plaintiff has suffered humiliation, mental anguish, and emotional and physical distress, and has been injured in mind and health. As a result of said distress and consequent harm, plaintiff has suffered such damages in an amount in accordance with proof at time of trial.

65. All actions of defendant Imperial Pacific, its employees and agents, and each of them as herein alleged, were intentional and malicious and known, ratified and approved by the officers or managing agents of defendant Imperial Pacific and plaintiff is, therefore, entitled to punitive or exemplary damages in an amount to be determined at the time of trial.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for damages against the defendant as follows:

1. For actual damages in an amount to be proven at trial.

2. For punitive damages to be determined at trial; and

3. For such other and further relief as the court deem appropriate.

DATED this 22nd day of December, 2016.

LAW OFFICE OF WILLIAM M. FIZGERALD

/s/ *William M. Fitzgerald*
William M. Fitzgerald, Esq.
Attorney for Plaintiff